# EXHIBIT   5 (Part 1)

RECEIVED IN CRIMINAL DOCKETING

IN THE CALIFORNIA STATE SUPREME COURT

IN AND FOR THE STATE OF CALIFORNIA

| | |
|---|---|
| Kenneth Dowell )<br>   Petitioner )<br>           )<br>   v.         )<br>           )<br>Board of Prison Hearings )<br>   Respondent )<br>_____) | CASE NO.<br><br>CHARGED OFFENSE NUMBER IN THE<br>SUPERIOR COURT OF LOS ANGELES<br>#A-454394 (1982)<br>SUPERIOR COURT WRIT #BH004727<br>SECOND APPELLATE DISTRICT No.<br>B204310 |

**COPY**

PETITION FOR REVIEW

Kenneth Dowell
C-78669, 1-N-26U
San Quentin Prison
San Quentin, CA.
94974

VERIFICATION

STATE OF CALIFORNIA   )
                      )
COUNTY OF MARIN       )

(C.C.P. section 446 & 2015.5; 28 U.S.C. section 1746)

I, KENNETH DOWELL, declare under penalty of perjury that:

I am a party in the above-entitled action; I have read the foregoing documents and know the contents thereof; and the same is true of my own knowledge, except as to matters stated therein upon information and belief, and as to those matters I believe they are true.

Executed this 15th day of January 2008, at San Quentin State Prison, San Quentin, California 94974.

S/S *Kenneth Dowell*
    Kenneth Dowell

i.

TABLE OF CONTENTS

VERIFICATION                                                    i.

TABLE OF CONTENTS                                              ii.

TABLE OF AUTHORITIES                                       iii-iv.

MEMORANDUM OF POINTS AND AUTHORITIES                       1-27
IN SUPPORT OF PETITION FOR REVIEW

INTRODUCTION                                                1-11

ARGUMENT  I -  SOME EVIDENCE                               11-23

        a. Consequences of actions and magnitude            12
        1. Especially atrocioius dispassionate & calculated  14
        2. Inexplicable and Trivial                          17
        3. Unstable tumultuous relationships                 18
        4. Parole plans/Vocationally upgrade                 19
        5. Self-help and therapy                             21
        6. Psychological report doesn't support parole       22

ARGUMENT II - PREPONDERANCE OF EVIDENCE                    23-26

CONCLUSION                                                 26-27

EXHIBITS

PROOF OF SERVICE

## TABLE OF AUTHORITIES

| Cases | Pages |
|---|---|
| Anderson v. Smith, 97 F.2d 239 | 11 |
| Armstrong v. Davis, 275 F.3d 849 | 25 |
| Biggs v. Terhune (9th Cir.2003) 334 F.3d 910 | 2,11,12,13,26 |
| Board of Pardons v. Allen, 482 U.S. 39 | 3 |
| Bolani v. Immigrations, 9 F.2d 1157 | 25 |
| Caldwell v. Miller, 790 F.2d 589 | 24 |
| Carson v. Block, 790 F.2d 562 | 24 |
| Envil.Def.Ctr. Inc. v. EPA (2003) 344 F.3d 832 | 12 |
| Greenholtz v. Inmates, (1979) 442 U.S. 1 | 3,11 |
| Hayward v. Marshall, No. 06-55392 (9th Cir. 2008) | 8 |
| In re Capistran (2003) 107 Cal.App.4th 1299 | 11 |
| In re Dannenberg (2005) 34 Cal.4th 1061 | 2,6,15,18 |
| In re DeLuna (2005) 126 Cal.App.4th 585 | 13,15 |
| In re Elkins, 144 Cal.App.4th 489 | 3 |
| In re George Scott, DJDAR 12450 | 13 |
| In re Lowe, 130 Cal.App.4th 1405 | 15 |
| In re Montgomery, 2d Civil No. B192544 (2007) | 9 |
| In re Ramirez (2001) 94 Cal.4th 549 | 6 |
| In re Rosenkrantz (2002) 29 Cal.4th 616 | 2,10,11,13,14,15,17,26 |
| In re Rosenkrantz, (2000) 80 Cal.App.4th | 24 |
| In re Scott, 119 Cal.App.4th 871 | 3,4,5,10,16,17,18 |
| In re Smith, 109 Cal.App.4th 503 | 11,14 |
| In re Tripp, 150 jjCal.App.4th 319 | 10 |
| In re Van Houten, 11 Cal.App.4th 329 | 1 |

iii.

In re Weider, 145 Cal.App.4tyh 570 ............................................ 5

Jancsek, 833 F.3d 1390 ............................................ 13

McQuillion v. Duncan (9th Cir. 2002) 306 F.3d 895 ............ 11,12

McBee v. Bonner, 296 F.2d 235 ............................................ 25

Morton . Ruiz, 415 U.S. 199 ............................................ 24

Pearce v. Director, 647 F.2d 716 ............................................ 24

People v. Bridgehouse, 47 Cal.2d 406 ............................................ 17

People v. Burnick, 14 Cal.3d 306 ............................................ 23

People v. Neol (2005) Cal.App. Lexis 711, 148 ............................................ 13

Rosenkrantz v. Marshall, 444 F.Supp 2d 1063 ............ 1,23

Superintendent v. Hill (1985) 472 U.S. 445 ............ 3,11,25

Services v. Dulles, 354 U,.S. 363 ............................................ 24

Taylor v. U.S., 734 F.2d 1152 ............................................ 25

Thomas v. Brown, LEXIS 94460 (N.D. Ca. 2006) ............ 8

Turner v. Henman, 829 F.2d 612 ............................................ 24

VanderMolen v. Stetson, 571 F.2d 617 ............................................ 24

Wolff v. McDonell, 418 U.S. 539 ............................................ 24

## STATE STATUTES

Penal Code § 3003 ............................................ 9,20
Penal Code § 3041 ............................................ 25
Penal Code § 11177 ............................................ 20
Cal.Code of Regs., tit. 15 § 2000 ............................................ 25,25
Cal.Code of Regs. tit. 15 §2322 ............................................ 18
Cal.Code Regs, tit. 15 §2402 ............................................ 5,7,9,13,19

Kenneth Dowell
C-78669, 1-N-26U
San Quentin Prison
San Quentin, CA.
          94974

<u>IN PRO SE</u>

IN CALIFORNIA STATE SUPREME COURT

IN AND FOR THE STATE OF CALIFORNIA


Kenneth Dowell            )
    Petitioner        )     CASE NO. S_____
                      )
    v.                )     SUPERIOR COURT WRIT #A454394
                      )     SECOND APPELLATE DISTRICT
Board of Prison Hearings  )     #B204310
    Respondent        )
_____)



PETITION FOR REVIEW
ON
HABEAS CORPUS


   TO THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE,
AND THE ASSOCIATE JUSTICES OF THE CALIFORNIA SUPREME COURT.

    Habeas petitioner, Kenneth Dowell, respectfully
petitions for review pursuant to the summary denial of the
Court of Appeal, Second Appellate District, filed January
08, 2008. A copy of the court order denying the writ of habeas
corpus is attached as Attachment E to this petition.


1.

ISSUES PRESENTED:

1.      IS IT REASONABLE OR PERMISSIBLE FOR THE BOARD OF
        PAROLE HEARINGS TO USE THE SAME FACTORS THAT WENT
        INTO FORMULATING THE GUIDELINES FOR SETTING TERMS
        AS A STATED REASON TO DENY PAROLE?

2.      HOW LONG OR HOW MANY TIMES CAN THE BOARD OF PAROLE
        HEARINGS USE THE SECOND DEGREE MURDER COMMITMENT
        OFFENSE AS A STATED REASON TO DENY PAROLE WHEN THE
        COMMITMENT OFFENSE WAS THE REASON FOR GOING TO PRISON
        IN THE FIRST PLACE?

3.      DOES THE 25 YEAR OLD COMMITMENT OFFENSE SUPPORT A
        FINDING OF UNSUITABILITY FOR PAROLE WHEN ALL OTHER
        FACTORS WEIGH IN PETITIONERS FAVOR?

4.      WHAT IS THE PROPER STANDARD OF REVIEW WHEN A LIBERTY
        INTEREST OF PAROLE IS INVOLVED?

5       NOW THAT PETITIONER IS BEYOND THE FIRST DEGREE MURDER
        MATRIX, WITH GOOD TIME CREDIT HE HAS SERVED OVER
        33 YEARS, SHOULD HE NO LONGER HAVE TO SERVE A PAROLE
        PERIOD?

REASON FOR GRANTING REVIEW:

        The present case illustrates the Board of Prison
Hearings' continued propensity to find suitable term-to-life
prisoners unsuitable for release on parole based on the same
factors that went into formulating the guidelines for setting
terms. The Second District Appellate Court's decision for
the most part is in contradiction to those of other appellate
courts when the Second Appellate District denied the writ of
habeas corpus pursuant to In re Dannenberg (200) 34 Cal.4th
101, 1080, 1082; In re Rosenkrantz (2002) 29 Cal.4th 16, 667
and Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910, 917.

2.

ARGUMENTS OF LAW:

1.      THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S STATE AND FEDERAL DUE PROCESS WHEN FAILING TO APPLY THE PROPER CRITERIA, AND ITS DECISION DENYING PETITIONER PAROLE WAS NOT SUPPORTED BY SOME EVIDENCE.

A.      Due Process Requires That Some Evidence Support a Parole Denial.

On November 30, 2006, Petitioner was denied parole primarily on the grounds of the March 24, 1982 crime being "carried out in a very cruel and callous manner." (See Exhibit B, Board Transcripts. p. 88-89.) The record shows that the Board ignored the avalanche of evidence of rehabilitation.

A California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore right to due process in the parole suitability proceedings. See Sass, 41 F.3d at 1127-28; Board of Pardons v. Allen, 482 U.S. 39 (1987); Greenholtz v. Inmate of Nebraska Penal Corr. Complex, 442 U.S. 1 (1979); Cal.Penal Code § 3041(b).

A parole board's decision satisfies the requirement of due process if "some evidence" supports the decision. Sass, 461 F.3d at 1128-29 (adopting some evidence standard of disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 455, 454-55 (1985)). However, some evidence "must have some indicia of reliability" (Scott I, supra, 119 Cal.App.4th at p. 899) and "suitability determinations must have some rational bases in fact." In re Elkins, supra, 144 Cal.App.4th p. 489.)

3.

As the California Supreme Court has summarized, the judicial branch is authorized to review the factual basis of a decision of the Board denying parole in order to ensure that the decision comports with the requirements of due process of law but, in conducting such a review, the court may inquire only whether some evidence in the record before the Board supports the decision to deny parole, based upon the factors specified by the statute and regulations. If the decisions consideration of the specified factors is not supported by some evidence in the record and thus is devoid of factual basis, the court should grant the prisoner's petition for writ of habeas corpus and should order the Board to vacate its decision denying parole and thereafter to proceed in accordance with due process of law. (In re Rosenkrantz, 29 Cal.4th at p. 658, emphasis added.)

B.      The Board's Decision Denying Petitioner Parole Based on the Commitment Offense cannot be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense.

"The nature of the prisoner's offense, alone can constitute a sufficient basis for denying parole." Rosenkrantz, supra, 29 Cal.4th p. 682, 128 Cal.Rptr.2d 104, 59 P.3d 174.) However, Chief Justice George noted in the next paragraph, "In some circumstance, a denial of parole based upon the nature of the offense alone might rises to the level of a due process violation – for example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that

4.

offense... 'the Board's authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole 'normally' be granted... [A] life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of parole date.'" <u>Rosenkrantz</u>, supra, 29 Cal.4th at p. 683, 128 Cal.Rptr.2d 104, 59 P.3d 174.)

Petitioner was convicted of second degree murder and sentenced to a term of 15 years-to-life with the possibility of parole. With custody credits, at the time of his November 2006 hearing, he had been in custody for 25 years, over 15 years beyond his Minimum Eligible Parole Date. (Cal.Code Regs., tit., 15 § 2403.) With good time credits, he has served a term of 33.5 years. Accordingly, Petitioner is now being punished as if he had been convicted of first degree murder with special circumstance.

When a person is convicted of second degree murder, due process requires that the Board's findings must be based on a comparison to instances of first degree murder. (<u>In re Weider</u> (2006) 145 Cal.App.4th 570, 582-583.)

If a comparison to first-degree murder was not required in those situations, absurdly, Petitioner would be better off if he had been convicted of first degree murder, because then there would be no question that the same crime facts would have to be examined by the Board to see if the

5.

murder was especially heinous for a first degree murder, rather than a second degree murder. More logically, the crime must now be evaluated for exceptionality against the elements of first degree murder. As the Court stated in In re Rosenkrantz, 29 Cal.4th 661 (Cal. 2002): "... there will come a point, which already may have arrived, when Petitioner should have become eligible for parole if he had been convicted of first degree murder. Once petitioner reaches that point, it is appropriate to consider whether his offense would still be considered especially egregious for a first degree murder in order to promote the parole statute's goal of proportionality between the length of sentence and the seriousness of the offense." (See In re Ramirez (2001) 94 Cal.App.4th 549, 570-571 [114 Cal.Rptr.2d 381] (In re Rosenkrantz, supra, 29 Cal.4th 690 [Cal. 2002].)

While the Supreme Court in In re Dannenberg (2005) 34 Cal.4th 1061 [23 Cal.Rptr.3d 817, 104 P.3d 783] rejected the proposition that the Board must evaluate each case under standards of term uniformity, (Dannenberg, 34 Cal.4th 1061 at 1077; 23 Cal.Rptr.3d at 410), it took nothing away from the Board's obligation to compare like crime when trying to determine if the crime under review is exceptional. And to find that the facts of the crime render it exceptional, the criminal conduct must exceed the elements of the crime under review. The Supreme Court explained this in Dannenberg, (supra, at pp. 1094-1095.): "use of the phrase 'particularly egregious,'

6.

conveyed only that the violence or viciousness of the inmate's crime must be more than minimally necessary to convict him of the offense for which he is confined." (Id. at p. 1095.) See also In re Scott (2004) 109 Cal.App.4th 489.)

In Rosenkrantz the Court observed vis-a-vis Rosenkrantz's commitment offense "Other than felony murders, first degree murders by definition involve premeditation and deliberation. Moreover, Petitioner was found guilty of second degree murder, therefore, petitioner's offense did not partake of any of those characteristics that make an offense particularly egregious under the Board of Prison Term's parole eligibility matrix for first degree murder, e.g., torture, the infliction of severe trauma not involving immediate death, or murder for hire. (Cal.Code Regs., tit., 15, § 2403, subd. (b).)

Rosenkrantz, here is particularly apropos to the case at bar. There was no evidence to prove first degree murder, otherwise, it is reasonable to assume, Petitioner should have been convicted of first degree murder. As Petitioner's crime facts are not sufficient to place the crime in the category of a first degree murder, these same facts cannot constitute "some evidence" of exceptionality of a first degree murder.

Nor is Petitioner's crime "exceptional" pursuant to Title 15 § 2402(C)(1).

The ultimate directive to the Board by Penal Code

7.

§ 3041; California Code of Regulations, Title 15 § 2400 and the decided cases, is to make a determination as to whether or not Petitioner would now pose an unreasonable risk of danger to society if he were to be released.

The focus is on present time. The "some evidence" upon which the Board may rely to deny parole must be evidence of a present danger of Petitioner committing a violent act against society if he is paroled. (Hayward v. Marshall, No. 06-55392 01/03/08 (9th Cir. 2008).)

In Thomas v. Brown, (2006) U.S. Dist. LEXIS 94460, 1-12 (N.D. Cal. 2006) the court itself looked at the current psychological evaluation and emphasized the currency of the potential threat, faulted the Governor for relying on an old psychological evaluation and ignoring a more current one. Thomas v. Brown, supra, *24 Similarly in Petitioner's case the Board ignored the evaluations of (Exhibit C.)

Had the Board fairly and impartially reviewed the relevant and reliable information available to it, rather then pick and chose that which most suited its premeditation to deny parole and ignore the rest (Exhibit C.), the Board would have reached a different conclusion.


THE SUPERIOR COURT DECISION:

In April 2007 this writ of habeas corpus was forwarded to the Los Angeles County Superior Court. On November 19, 2007, the Superior Court denied the writ of habeas, and found

8.

contrary to the record and exhibits attached hereto; and stated
that petitioner "forced his ex-wife into his vehicle," drove
around searching for his ex-wife's boyfriend, and that it was
petitioner who retrieved a handgun and shot first, killing
him.  The court went on to find that there was "some evidence"
to deny parole: "The record reflects that Petitioner was
convicted of public drunkenness, possession of narcotics,
brandishing a firearm, drunk driving, and pandering."  The
court further found that petitioner "has not sufficiently
participated in self-help programs.  In addition, Petitioner
has not upgraded academically...  Petitioner's proposed parole
plans consist of residing with his brother in Oregon.  (Not
his commitment county.)  In addition, Petitioner does not have
an offer of employment...  Every factor considered by the Board
need not be stated, especially if it is not persuasive."
(Exhibit E, pp.2&3.)

What the lower court failed to recognize is that
out of state parole plans are acceptable (P.C. § 3003), nor
it is necessary to have a job offer.  (See Cal.Code of Regs.,
tit. 15 § 2402 Understanding and Plans for Future.)  Moreover,
prior convictions must be violent.  (Cal.Code of Regs., tit.
15 Previous Record of Violence.)

Of great importance is that the lower court's findings
are contrary to In re Michael Montgomery, 2d Civil No. B192544
11/7/07.  "The Board's authority to make an exception [to
the requirement of setting a parole date] based on the gravity

9.

of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted." (In re Rosenkrantz, 29 Cal.4th 616, 683.) (Id. p.14.)

As stated, the Superior made an error when determining it was petitioner who sought out the victim with the intend to kill him. The record is clear in this regard, petitioner and his ex-wife were returning from Long Beach when petitioner found the victim was following them. Pulling into a parking lot, the victim stepped from his vehicle and started shooting.

This Court further found, "Establishing that the commitment offense involved some elements more than minimally necessary to sustain a conviction is a step on the path of evaluating a prisoner's current dangerousness, but it is not the final step under the regulations. Due process affords an inmate 'an individualized consideration of all relevant factors.'" (In re Tripp (2007) 150 Cal.App.4th 30, 319, quoting In re Rosenkrantz, supra, 29 Cal.4th 616, 655.) (Id. pp.15&16.)

As was found in Montgomery, this petitioner has an exemplary prison record and the almost unanimous opinions of prison psychologists that petitioner poses a low risk for violence, the only rational conclusion is that petitioner poses no threat to public safety.

Of further interest to this Court is that both lower courts ignored the "Preponderance of Evidence" argument herein. The Board of Prison Hearings is required by law to uphold its

10.

own rules and regulations and its failure to do is a violation of petitioner's due process rights.

### THE BOARD OF PRISON HEARINGS
### FAILED TO UPHOLD
### THE SOME EVIDENCE REQUIREMENTS
### RESULTING IN A VIOLATION OF
### PETITIONER'S DUE PROCESS

While there is no federal constitutional right to parole, (Greenholtz v. Inmates of Nebraska Penal (1979) 442 U.S. 1, 11-12) both federal and state courts have recognized that California's parole scheme bestows on prisoners a cognizable liberty interest in parole that is protected by due process. Biggs v. Terhune (9th Cir. 2004) 334 F.3d 910, 914; Armstrong v. Davis (9th Cir. 2001) 275 F.3d 849, 864; McQuillion v. Duncan (9th Cir. 2002) 306 F.3d 895, 903; and In re Rosenkrantz (2002) 29 Cal.4th 616, 655-659 [prisoner's have a liberty interest in parole protected by due process.]

Within the context of parole consideration in California, due process requires that "some evidence" support a decision by the Board to deny parole. (Superintendent v. Hill (1985) 472 U.S. 445, 456; Biggs, supra, 334 F.3d at 915; Rosenkrantz, supra, 29 Cal.4th at 667; In re Smith, 109 Cal.App.4th at 501-503; In re Capistran (2003) 107 Cal.App.4th 1299, 1305; In re Ramirez (2001) 94 Cal.4th 549, 564; In re George Scott (2005) DJDAR 12450.)

11.

Accordingly, this Court must undertake a fact specific inquiry of whether there is evidence to deny parole under California law. (McQuillion, supra, 306, F.3d at 904-906; Biggs, supra, 334 F.3d at 915.) Specifically, the Court must determine whether there is some evidence that petitioner would currently present an "unreasonable risk of danger to society" if released on parole. (Cal.Code Regs., tit. 15 §2402(a); Penal Code, §3041(b).

## THE BPT HEARING RECORD

### a. Consequences of actions and magnitude

The Rosenkrantz court held the "some evidence" standard is not met when the Board minimizes culpability. It did so after (1) delving into the entire record before the Board as to the relevant issue in question; (2) specifically reviewing evidence that the Board had omitted in making its determination; and (3) assessing the reasonableness of the Board's interpretation of the entirety of there circumstances.

The court will find after reviewing all the evidence before the Board on this issue, no reasonable interpretation of the circumstances would justify finding "some evidence." Indeed, the Board's failure to consider all relevant evidence is consistently deemed, in a variety of contexts, to be arbitrary and capricious and abuse of discretion. See e.g., Envil. Def. Ctr, Inc. v. EPA (2003) 344 F.3d 832, 858 n.35 (holding federal agency has acted in arbitrary and capricious

12.

fashion if the agency has "entirely failed to consider an important aspect... [or] its decision... runs counter to the evidence." According to People v. Neol (2005) Cal.App. Lexis 711, at 148, "The trial Court was not permitted to substitute its conclusion... under circumstances where it could not explain how this... bit of evidence trumped the otherwise overwhelming counterrailing credible evidence..." This is the same as the Board has done in petitioner's case.

   The evidence relied on by the Board must be " reliable," (Regs.. §§ 2402, subd. (b), 2281, subd. (b)); it must have "'"some indicia of reliability."'" (In re Scott (2005) 133 Cal.App.4th 573, 591, 34 Cal.Rptr.3d 905; Biggs; 334 F.3d at 915; McQuillon, 306 F.3d at 904; Jancsek, 833 F.3d at 1390.), Additionally, the requirement of procedural due process embodied in the California Constitution (Cal. Const., art. I, § 7, subd. (a)) places some limitations upon the discretionary authority of the Board. (In re Rosenkrantz (2002) 29 Cal.4th 585, 655. A prisoner is entitled to "an individualized consideration of all relevant factors." (In re DeLuna, 126 Cal.App.4th at p. 591.) The Board's decision "must reflect an individualized consideration of the specified criteria and cannot be arbitrary or capricious," and this requirement was not accomplished during petitioner's hearing.   There is nowhere in the record that shows the Board used the California Code of Regulations, title 15 § 2402, and individually cited each factor in relation to their findings.   In order for the Board to meet procedural

13.

due process embodied in the California Constitution it must
address all fifteen (15) factors, and not give six (6) turgid
reasons without implementing the applicable factors for each
one.

Petitioner will now address each in numerical order:
(1) Especially atrocious dispassionate and calculated

The California court implemented what is known as
the "beyond the minimum necessary" in relation to the death
of a victim (In re Rosenkrantz, 29 Cal.4th at 683.); and the
question here is, what evidence indicates that any particular
second degree murder was somehow "beyond the minimum necessary
to sustain a conviction?" In other words, what evidence
indicates the commitment offense was "especially atrocious,
dispassionate and calculated," given that there typically must
be a finding of some level of heinousness, in order for anyone
to have been convicted of second degree murder in the first
place? Cal.Code Regs tit. 15 § 2402(c)(1); Smith 114
Cal.App.4th at 366-67 (noting that "all second degree murders
by definition involve some callousness-i.e., lack of emotion
or sympathy, emotional insensitivity, indifference to the
feelings and suffering of others."

In order for a crime to be "atrocious, dispassionate
and calculated" and meet the "minimum necessary to sustain
a conviction," the offense must have been carried out
execution-style. Rosenkrantz, supra, 29 Cal.4th at p. 683.
Moreover, there had to be multiple victims attacked, injured

14.

or killed in the same or separate incidents. ( See Cal.Code
Regs, tit. 15 § 2402(a)(1)(A).)

The court in <u>In re George Scott</u>, 133 Cal.App.4th
(#) (Oct. 18, 2005) held "[it] is necessary to remember that
denial of parole based upon the nature of the offense  may
rise to the level of a due process violation, as where no
circumstances of the offense reasonably could be considered
more aggravated or violent than the minimum necessary to sustain
a conviction for that offense." (<u>Rosenkrantz</u>, supra, 29 Cal.4th
at p.683.)  Therefore an unsuitability determination must be
predicated on "some evidence that the particular circumstances
of [the prisoner's] crime-circumstances went beyond the minimum
elements of his conviction-indicated exceptional callousness
and cruelty with trivial provocation, and thus suggested he
remains a danger to public safety." (<u>In re Dannenberg</u>, supra,
34 Cal.4th at p. 1098.) The Scott court went on to explain
comparisons, "[in] Rosenkrantz... a full week of careful
preparation, rehearsal and execution" took place, "[the]
prisoner, fired 10 shots at close range from an assault weapon
and fired at least three or four shots into the victim's head
as he lay on the pavement, carried out the crime with planning,
sophistication or professionalism," is more aggravated or
violent, and meets the "minimum necessary." (<u>Rosenkrantz</u>,
at p.678.)  Similarly, there was evidence of premeditation
in <u>In re Lowe</u> (2005) 130 Cal.App.4th 1405, which also involved
a second degree murder conviction.  There the prisoner purchased

15.

the gun shortly before the murder, entered his victim's bedroom
in the middle of the night while he was asleep, unsuspecting,
and in a special relationship of confidence and trust with
his killer, 'shot him five times in the head and chest,
execution style.' (Id. at p. 1414.) As this court stated,
this evidence showed the murder 'was a cold-blooded execution'
and that the prisoner's 'egregious acts [were] far more
aggravated than the minimum necessary to sustain a second degree
murder conviction.'" (In re Scott, 119 Cal.App.4th 871, 889-
892; In re Van Houten (2004) 116 Cal.App.4th 339; Rosenkrantz
v. Marshall, 444 F. Supp.2d 1063; In re Dannenberg, 34 Cal.4th
at p. 1098.))

        Moreover, the circumstances of petitioner's crime
are significantly less egregious than those in other cases
in which the nature of the offense was found to support a
finding of suitability. (See Rosenkrantz v. Marshall, supra,
444 F. Supp.2d 1063.)

        There is no evidence petitioner "tormented,
terrorized, or injured his victim before ... shooting him,
or that he gratuitously increased or unnecessarily prolonged
his pain and suffering." (See In re Scott, 119 Cal.App.4th
871, 892.) Because the relevant evidence shows no more callous
disregard for human suffering than is shown by most second
degree murder offenses, the Board's use  of this factor to
conclude that petitioner committed his offense in an "especially
atrocious dispassionate and calculated manner" and that the

                              16.

murder was "execution style," is arbitrary and capricious. (In re Rosenkrantz, supra, 29 Cal.4th at 655.)

Petitioner's commitment offense was a result of stress. The stress came from his wife leaving him, and taking his two children away, for the love of another man. The fear came as a result of the victim shooting at him. (Exh. A p.10) These circumstances are almost identical to those in In re Scott, supra, 119 Cal.App.4th 871, 894. ([t]he record shows that his unpremeditated offense resulted from some provocation on the part of the victim ... the circumstances are similar to those which have reduced criminal liability from murder to manslaughter, as the emotional pain caused by the departure or infidelity of a loved one is often seen by juries as diminishing self-control.) (see, e.g., People v. Bridgehouse (1956) 47 Cal.2d 406, 414 [303 P.2d 1018].)

The record is clear, petitioner did not plan, rehearse and commit the offense with sophistication and professionalism. Thus the Board's denial does not meet the "minimum necessary" standard as set forth in Rosenkrantz, or the "some evidence" standard in Superintendent v. Hill, supra, (1985) 472 U.S. 445.

(2) Inexplicable and trivial

As to "inexplicable and trivial," the Scott court continued to say, "To fit the description of very trivial in relation to the offense requires comparisons; the motive must

17.

be materially less significant (or more "trivial") than those which drive people to commit the offense in question, and therefore more indicative of a risk of danger to society if the prisoner is released than is ordinarily presented." (119 Cal.App.4th at 894.)   If the Scott court's reasoning is correct, the "inexplicable and trivial" standard does not meet the "some evidence" criteria in the Board's findings — for the victim's actions, when shooting at petitioner, were directly related to petitioner's conduct of acting in self-defense.

### (3) History of unstable, tumultuous relationships

The Board found "Petitioner has a history of assaultive behavior and unstable, tumultuous relationship with others (Exh. B p.89).   The Board may consider misconduct only if it is reliably documented.   Within Penal Code § 3043.5, the Board is required when deciding whether to release the person on parole, to "review all information received... to insure that... all current and past convicted offenses have been given adequate consideration." (Emphasis added.)   In re Dannenberg, 34 Cal.4th at 1084.

California Code of Regulations, title 15 § 2322 sets forth the criminal history to be considered by the Board, to which, if the crime is over five years old it cannot be used to extend the total period of confinement.

Cal.Code of Regs, tit. 15 § 2326 requires the

18.

circumstances surrounding the charge to be reliably documented and an integral part of the crime for which the prisoner is currently committed to prison.

The BPH when finding petitioner unsuitable for parole stated:  "your record of public drunkennes, drunk driving, brandishing a firearm and pandering, all have led up to the life crime." (Exh. B p.89)  First, how does drunk driving lead to murder?  Second, the record explains the brandishing charge, to which petitioner makes it clear that the weapon was a knife, not a firearm. (pp.64-65)  And third, the pandering charge has nothing to do with murder, nor is it a violent crime against the victim, which is required by Cal.Code of Regs, tit. 15 § 2402(c)(2).  Moreover, the Board's "reliance on an unchanging factor, the circumstance of the offense and <u>conduct prior</u> to imprisonment, runs contrary to rehabilitative goals espoused by the prison system, and resulted in a due process violation." <u>In re Rosenkrantz</u>, 29 Cal.4th at 689,

**(4) Petiitoner needs to upgrade vocationally/Needs parole plans**

One of the factors under Cal.Code Regs, tit. 15., 15. § 2204(d)(8) in finding a prisoner suitable for parole is "the prisoner has made realistic plans for release <u>or</u> has developed marketable skills that can be put to use upon release. "  (Emphasis added.) It is not required to have both, one is sufficient.

The record is indisputable, petitioner received a

19.

certificate of achievement in the Maintenance and Operation of High Pressure Boilers, Vocational Machine Shop and Millwright Machinist. (Exh B pp.31-33)

As to parole plans, the Court will find petitioner submitted letters of support from his brother in Oregan, and an Aunt in the Los Angeles area. (Exh. B pp.46-47) The Board however, refused to accept the parole plans from Oregan, speculating that petitioner's brother had weapons in his house. This analogy is ludicrous. Guns can be acquired in any city within California, and for the Board to reason that petitioner cannot be parole to his brother's house because he might have a gun in the house is without merit. Moreover, during petitioner's previous board hearing, the commissioner encouraged this petitioner to obtain "an interstate transfer to Oregon." (Exh. D p.68)

The United States Congress in 1934 (Penal Code § 11177) set forth an act granting the consent to any two or more states to enter into agreements of compacts. Penal Code § 11177(c) states: "That it shall be competent for the duly constituted judicial and administrative authorities of a state party to this compact (herein called "sending state"), to permit any person convicted of an offense... and placed on... parole to reside in any other state party to this compact... (a) [If] such person is in fact a resident or has his family residing within the receiving state..." Also see Penal Code § 3003(b)(i) "An inmate may be paroled to another state pursuant to any

20.

law."

As previously mentioned, the title 15 § 2402 subd.(d)(8) only requires to have parole plans or a marketable skill. Not both.

5) **Petitioner's need for further beneficial self-help and therapy**

The Court is directed to the Cal.Code of Regs., tit. 15 § 2402(c)(5) where it is clear "The prisoner [must have] a lengthy history of severe mental problems related to the offense." There is nowhere within the record showing petitioner has a mental history related to the offense. Nor is there anywhere within the title 15 § 2402, requiring a prisoner to participate in self-help programs.

More importantly, the Board Commissioner recognizes that self-help programs may not be available (Exh. B p.97), and fails to recognize the psychological report at page 4, where Doctor Inaba addresses self-help: "It would seem that in the intervening years, Mr. Dowell has participated in self-help and religious activities that have given him the skills to conduct himself in a sober and non-violent manner across settings. He regularly attends AA and is on the waiting list for Kairos." The Board during petitioner's July 2003 hearing commended petitioner for his participation in self-help therapy programs. (Exh. D p.65) How is it, then, that the 2006 Board can find petitioner unsuitable for parole for failing to attend

21.

self-help programs?

(6) The Board found the Psychological report is not supportive of release

       The Court is directed to petitioner's psychological evaluation, where Doctor Inaba states, "He has no present dynamic risk factors such as loss of control or impulsive behavior, lack of compassion, anger, or parnoid or violent thoughts." Under: V. Clinician Comments and Summary, Doctor Inaba also found petitioner's "risk of violent recidivism would be low." (Exh C., May 02, 2006, psychological evaluation at page 4)

       The Board chose to reject the foregoing and put itself in the position of a Psychologist (Exh. B p.p. 90-91) and use their own reasoning to deny parole, then assess petitioner as a risk to society.

       The State Supreme Court in People v. Burnick, 14 Cal.3d 306, 327; 121 Cal.Rptr. 488; 535 P.2d 352, found "The evidence, as well as the consensus of opinion by responsible scientific authorities, is now unequivocal." (Diamond, the Psychiatric Prediction of Dangerousness (1975) 123 U.Pa. L.Rev. 439, 451.) In the words of spokesmen for the psychiatric profession itself, "Unfortunately, this is the state of art. Neither psychiatrists nor anyone else have reliably demonstrated an ability to predict future violence or 'dangerousness.' Neither has any special psychiatric 'expertise' in this area

22.

been established." (Task Force Report, Clinical Aspects of the Violent Individual (American Psychiatric Assn., 1974) p.28) And the same studies which proved the inaccuracy of psychiatric predications have demonstrated beyond dispute the no less disturbing manner in which such prophecies consistently err; they predict acts of violence which will not in fact take place ("false positives"), thus bringing as "dangerous" many persons who are in reality totally harmless. (See generally id. at pp.23-30.)

It is hard to believe that the Board would set aside a recent Psychological evaluation (May 2006), which support parole, then use an evaluation from September 2000 (Exh. B p.90) to find unsuitability for parole.

What may be of further interest to the Court is that psychiatric evaluations and, "The recommendation shall be submitted to the Director of Corrections and shall not be effective until approved by the director." Penal Code § 5079. In that this is the case, petitioner's psychological evaluations are invalid — for the Director of Corrections did not review and approve the recommendations.

## THE BPH IS REQUIRED TO USE THE PREPONDERANCE OF EVIDENCE STANDARD DURING A PAROLE HEARING

The California Board of Hearings' failure to follow its procedures is fundamentally unfair, and a violation of the Fifth Amendment.

23.

The United States Constitution requires states and their agencies to comply with all the procedures they establish. Carson v. Block, 790 F.2d 562, 565-6. A violation of the BPH's rules authorizes relief in this proceeding if the rules are themselves essential components of due process of law — that is, if the procedures used by the BPH violates the Constitution. Under 18 U.S.C. § 4218, a parole board's failure to follow administrative rules and regulations violates constitutional provisions. Turner v. Henman, 829 F.2d 612.

Numerous federal courts, including the United States Supreme Court have found "an inmate is entitled to expect the Bureau of prisons to follow its own policies." Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2925, 41 L.Ed.2d 935. In re Rosenkrantz (2000) 80 Cal.App.4th 409, 424-425 also found the Board must determine parole suitability by following its own rules and regulations.

According to Caldwell v. Miller, 790 F.2d 589, 09, "An agency must conform its actions to the procedures that it has adopted." See Pearce v. Director, Office of Workers' Compensation, 647 F.2d 716; VanderMolen v. Stetson, 571 F.2d 617, 624; see also Morton v. Ruiz, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.) Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012; Services v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403. "An inmate, too, has the right to expect

24.

prison officials to follow its policies and regulations."
Anderson v. Smith, 697 F.2d 239. Here the proper procedure
for the BPH and courts to follow is the "preponderance of
evidence" standard within the Cal.Code of Regs. tit. 15 §
2000(50).

Section 2000(a) states: "The following rules of
construction apply to the regulations contained in this
division..." At the end of § 2000 reference is made to Penal
Code § 3041 - thus all prison inmates have a liberty interest
pursuant to Cal.Code of Regs. tit. 15 § 2000(50) preponderance
of evidence, and not the more stringent "some evidence"
standard, which is not mandated by the California State
Legislature.

Whenever an abuse of discretion is made by an
administrative agency, reviewing courts cannot set it aside
unless the court has a definite and firm conviction that a
clear violation in judgment has not taken place. Taylor v.
United States Parole Commission, 734 F.2d 1152, 1154; Bolani
v Immigration & Naturalization Service, 669 F.2d 1157, 1160;
McBee v. Bonner, 296 F.2d 235, 237.

Although numerous courts are using the "some evidence"
standard as set forth in Superintendent v. Hill, supra, 472
U.S. 445, and In re Rosenkrantz supra, 29 Cal.4th 616, the
"some evidence" standard is in direct conflict with the Cal.Code
of Regs. tit. 15 § 2000(50). The fact is, the law is what
it is, and the "some evidence" standard should not be allowed

25.

to supersede the mandated preponderance of evidence within the Cal.Code of Regs. title 15 § 2000.

If the Legislature intended for the "some evidence" to be the applicable standard, the Cal.Code of Regs. tit. 15 § 2000(50) would have been repealed.

There are a total of fifteen factors the Board must use to find suitability or unsuitability. If the Board implements the Cal.Code of Regs. title 15 § 2000(50) and uses the preponderance of evidence standard, eight of those factors are required to find petitioner unsuitable for parole, not five as was done during the hearing.

## CONCLUSION

The Board found during petitioner's seventh (7th) parole consideration hearing that petitioner was unsuitable for parole based upon the gravity of the crime. The Ninth Circuit and California Supreme Court made it clear that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 917; Rosenkrantz, supra, 29 Cal.4th at 689.)

In the circumstances of this case, the Board's reliance upon the facts of petitioner's crime and his commitment offense as a reason to deny parole after 25 years of incarceration, violates due process. First, a continued

26.

reliance upon these unchanging factors makes a sham of California's parole system and amounts to an arbitrary denial of petitioner's liberty interest. Second, the circumstances of the crime and petitioner's criminal history do not amount to some evidence supporting the conclusion that petitioner poses an unreasonable risk of danger if released.

A review of all of petitioner's parole suitability hearings will reveal each board commissioner used the same factors to deny parole; and failed to realize that the commitment offense will never change. Does this constitute that the jury's findings of second degree murder, and the possibility of parole were a sham? What is there about the Penal Code pursuant to "Double Jeopary" that the Board doesn't understand when continuing to retry petitioner's case over and over, from his first parole consideration hearing in 1992 to the present?

The matrix for a second degree murder such as petitioner's, requires 16, 17 or 18 years of incarceration. Taking into account "good time credits," petitioner has now been incarcerated equivalent to 33 years. The question must be asked, is petitioner sentenced to life in prison without the possibility of parole?

It is, therefore, respectfully requested that this Honorable Court find that there is no evidence to support "an unreasonable risk to society," and order petitioner's immediate release.

27.

Dated: January 15, 2008

Kenneth Dowell
Litigant Pro-se

28.

<u>PROOF OF SERVICE</u>

C.C.P. section 1013a & 2015.5; 28 U.S.C. section 1746

I, KENNETH DOWELL, am a resident of San Quentin State Prison, in the County of Marin, State of California, am over the age of eighteen (18) years and am a party to the above-entitled action. My State prison address is San Quentin Prison, San Quentin, California 94974.

On January 15, 2008, I served the foregoing information to which was a Petition for Review on the party(s) herein by placing a true copy(s) thereof, enclosed in sealed envelope(s), with postage thereon fully paid, in the United States mail, in a deposit box so provided by the U.S. Postal Service, addressed as follows:

Second Appellate District
300 S. Spring St., Room 2217
North Tower
Los Angeles, CA 90013-1213

Department of Justice
Office of the Attorney General
110 West A Stree, 1100
San Diego, CA 92101

There is delivery service by United States mail at the places so addressed, and/or there is regular communication by mail between the place of mailing and the place so addressed. I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of January 2008.

SS _Kenneth Dowell_
Kenneth Dowell
Petitioner Pro-se

RECEIVED IN CRIMINAL DOCKETING



EXHIBITS

EXHIBIT    A

COUNTY OF LOS ANGELES
PROBATION OFFICER'S REPORT

COURT'S COPY (ORIGINAL

REPORT SEQUENCE NO. 1

| DEFENDANT'S NAME(S) | COURT | JUDGE | COURT CASE NO |
|---|---|---|---|
| KENNETH RAY DOWELL | DEPT. SE-F | MC GINLEY | A454394 |

| ADDRESS | HEARING DATE | DEFENSE ATTY. | PROSECUTOR |
|---|---|---|---|
| TRANSIENT | 11-15-83 | URBAN | FRIEDENBER |

| BIRTHDATE | AGE | SEX | RACE | DPO | AREA OFFICE | PHONE NO. |
|---|---|---|---|---|---|---|
| 10-6-46 | 37 | M | CAUC. | VARTANIAN | RIO HONDO | 692-7011 |

| CITIZENSHIP STATUS | DRIVER'S LICENSE / EXP. DATE |
|---|---|
| U.S. | SO2299927/ |

| PROBATION NO. | CII NO. | BOOKING NO. |
|---|---|---|
| X-831389 | 2771712 | 6555492 |

TYPE REPORT
X Probation and sentence
___ Pre-Conviction (131.3 CCP)
___ Post sentence
___ Diversion (Specify)

| DAYS IN JAIL THIS CASE | CUSTODY STATUS/RELEASE DATE |
|---|---|
| ☐ ESTIMATED ☒ VERIFIED 237 | JAIL |

## PRESENT OFFENSE: LEGAL HISTORY

CHARGED with the crimes of (INCLUDE PRIORS, ENHANCEMENTS OR SPECIAL CIRCUMSTANCES)

CT. 1, 187 PC (MURDER), USE ALLEGATION 1203.06(A)(1) PC AND 12022.5 PC
CT. 2, 207 PC (KIDNAPPING)

FILED

DEC 21 1983

JOHN J. CORCORAN, County Clerk

By _____ Deputy

CONVICTED of the crimes of (INCLUDE PRIORS, ENHANCEMENTS OR SPECIAL CIRCUMSTANCES)

CT. 1, 187 PC (MURDER), 2ND DEGREE PLUS USE ALLEGATION 1203.06(A)(1)
PC AND 12022.5 PC.

| DATE OF OFFENSE | TIME | CONVICTED BY | DATE OF CONVICTION/ACQUITTAL |
|---|---|---|---|
| 3-24-83 | UNKNOWN | JURY | 10-13-83 |

COUNT(S) CONTINUED TO P & S FOR DISPOSITION
NONE-CT. 2, FOUND NOT GUILTY

| PROPOSED PLEA AGREEMENT | SOURCES OF INFORMATION |
|---|---|
| 15 YRS. TO LIFE PLUS 2 YRS. CONSECUTIVE FOR USE. | D.A. FILE, DEFENDANT |

DEFENDANT:
☐ ON PROBATION
☒ PENDING PROBATION VIOLATION
☐ ON PAROLE-REMAINING TIME _____
☐ PENDING NEW CASE
HOLDS/WARRANTS: ☒ YES ☐ NO
(SEE PRIOR RECORD SECTION)

## RECOMMENDATION:

☐ PROBATION
☒ DENIAL
   ☐ COUNTY JAIL
   ☒ STATE PRISON
☐ DIAGNOSTIC STUDY
   ☐ 707.2 WIC
   ☐ 1203.03 PC
☐ CYA
☐ OTHER _____

C.I.M.R. & C E N H R

75P725G — Prob. 19SC (Rev. 7/83)

| PRESENT OFFENSE: (CONTINUED) | SOURCES OF INFORMATION ( age) D.A. FILE | | |
|---|---|---|---|

| CO-DEFENDANT(S) | CASE NO. | DISPOSITION | |
|---|---|---|---|
| NONE | N/A | N/A | |

| BOOKED AS | OFFENSE | LOCATION | ARRESTING AGENCY |
|---|---|---|---|
| DOWELL, KENNETH RAY | 187 PC (MURDER) 207 PC (KIDNAPPING) | IMPERIAL HWY., NORWALK | NORWALK SO HOMICIDE |

| ARREST DATE | TIME |
|---|---|
| 3-24-83 | 1:35 A.M. |

ELEMENTS AND RELEVANT CIRCUMSTANCES OF THE OFFENSE:

AT ABOUT 12:30 IN THE MORNING ON MARCH 24, 1982, THE DEFENDANT ENTERED THE RESIDENCE OF VICTIM PAULINE DOWELL, EX-COMMON-LAW WIFE, FORCED HER TO DRESS AND STATED THAT HE WAS GOING TO KILL HER AND HER BOYFRIEND, VICTIM JAMES WINNET. DEFENDANT THEN FORCED HER INTO HIS RED PICKUP AND THEY DROVE LOOKING FOR VICTIM WINNET. AT THE TIME, VICTIM DOWELL DID NOT KNOW THAT THEY WERE BEING FOLLOWED, BY VICTIM WINNET. THE DEFENDANT STOPPED THE PICKUP TRUCK AND RETRIEVED A HANDGUN FROM BENEATH THE SEAT AND EXITED THE TRUCK. SEVERAL SHOTS WERE FIRED AND THE DEFENDANT TOLD VICTIM WINNET THAT HE WAS GOING TO KILL HIM. AT ABOUT 1:45 A.M. VICTIM WINNET WAS DETERMINED TO BE DEAD.

AFTER DEFENDANT SHOT VICTIM WINNET, VICTIM DOWELL RAN FROM THE SCENE TO CALL FOR HELP. THE DEFENDANT SHOUTED FOR HER TO STOP AND WHEN SHE DID NOT COMPLY HE FIRED ONE SHOT AT HER.

-2- (DOWELL)

See Court Trans. rpt

| VICTIM: | SOURCES OF INFORMATION (Is page) |
|---|---|
| | D.A. FILE |

| NAME | COUNT(S) |
|---|---|
| JAMES MICHAEL WINNET | CT. 1 |

**INJURY; PROPERTY LOSS (TYPE / COST / ETC.)**

DECEASED

**INSURANCE COVERAGE**

UNKNOWN.

X___ VICTIM LIST CONTINUES NEXT PAGE

**VICTIM STATEMENT:**

VICTIM WINNET DIED AT THE SCENE.

| RESTITUTION: ☒ YES ☐ NO | ESTIMATED LOSS TO ALL VICTIMS |
|---|---|
| | UNKNOWN |

| RESTITUTION ALREADY MADE | APPLIED FOR VICTIM INDEMNITY FUND | VICTIM(S) NOTIFIED OF P&S HEARING |
|---|---|---|
| NO | UNK. ☐ YES ☐ NO | ☒ YES ☐ NO |

| DOES DEFENDANT HAVE INSURANCE TO COVER RESTITUTION: ☐ YES ☒ NO | INSURANCE COMPANY NAME, ADDRESS/TELEPHONE NO. |
|---|---|
| | N/A |

-3-  (DOWELL)

78P725B — Prob. 19SC (Rev. 7/83)

ADDITIONAL VICTIMS:

SOURCES OF INFORMATION (t:    age)

D.A. FILE

NAME
PAULINE IRENE DOWELL

COUNT(S)
CT. 2

INJURY: PROPERTY LOSS (TYPE / COST / ETC.)
NONE

INSURANCE COVERAGE
NONE

_____ VICTIM LIST CONTINUES NEXT PAGE

VICTIM STATEMENT:

    VICTIM STATES THAT THE DEFENDANT WAS HER COMMON-LAW HUSBAND FOR TEN YEARS.  SHE HAS MIXED FEELINGS ABOUT WHAT HAPPENED. SHE FEELS A LOT OF GUILT AND FEELS THAT THE OFFENSE WAS PARTLY HER FAULT.  PREVIOUSLY, THE DEFENDANT WARNED (CONTINUE PAGE 5)

NAME

COUNT(S)

INJURY: PROPERTY LOSS (TYPE / COST / ETC.)

INSURANCE COVERAGE

_____ VICTIM LIST CONTINUES NEXT PAGE

VICTIM STATEMENT:

-4- (DOWELL)

VICTIM:  (CONTINUED)

HER TO STAY AWAY FROM THE VICTIM, BUT SHE DID NOT.  SHE IS GLAD

THAT THE KIDNAPPING CHARGES WERE DROPPED BECAUSE ~~SHE NEVER FELT~~

~~THAT SHE WAS KIDNAPPED.~~  SHE INDICATES THAT SHE HAS TO LIVE WITH

HER GUILT FOR THE REST OF HER LIFE.  SHE FEELS THAT THE DEFENDANT

HAS LEARNED HIS LESSON.  SHE WANTS HIM TO GET OFF AS EASY AS

POSSIBLE.

-5-  (DOWELL)

PRIOR RECORD:

SOURCES OF INFORMATION (the file)
CII DATED 10-24-8    PROB. RECORDS,
DEFENDANT.

AKA'S:

JUVENILE HISTORY:

NONE.

ADULT HISTORY:

1-6-70          LYNWOOD PD - 11910 H&S (POSS. OF NARCOTICS), 12020 PC
                (CARRYING CONCEALED WEAPON) - ON CHARGE OF 417 PC
                (EXHIBITING FIREARM), 1 YR. PROB., $100 FINE.

9-7-70          HUNTINGTON PARK PD - WARRANTS - ON 10-20-70, 24252 VC
                (LIGHTING EQUIPMENT), $10 FINE SUSPENDED.  12951 VC
                (POSS. OF LICENSE), DISM.

9-26-70         LONG BEACH PD - TRAFFIC WARRANTS - ON 10-1-70, 40508 VC
                (FAILURE TO APPEAR), $20 OR 2 DAYS.  12951 VC (POSS. OF
                LICENSE), $15 OR 1 DAY.  4454(A) VC (REG. CARD), DISM.

3-6-74          ORANGE COUNTY PROB. - NON-SUPPORT - 3 YRS. PROB.

3-11-77         LONG BEACH PD - 23102(A) VC (DRUNK DRIVING) - ON 3-11-77,
                8 DAYS, $315.50 FINE.

9-11-78         SANTA ANA SO - CENTRAL ORANGE COUNTY WARRANT NO.
                78CN00792, 270 PC (NON-SUPPORT) - ON 12-18-78, DISM.
                FURTHERANCE OF JUSTICE.

2-7-80          LASO - 2661 PC (PANDERING) - THIS REFERS TO NORWALK
                SUPERIOR COURT CASE NO. A448375.  ON 5-15-80, 3 YRS.
                PROB., $350 FINE.  ON 7-29-82, PROB. REVOKED.  VIOL.
                OF PROB. TO TRAIL P&S HEARING ON CASE NO. A454394.

3-24-82         LASO - 187(A) PC (MURDER)

        (THIS REFERS TO THE PRESENT OFFENSE.)

-6- (DOWELL)

PERSONAL HISTORY:

| SOURCES OF INFORMATION (this page) |
|---|
| DEFENDANT |

| RESIDENCE | TYPE RESIDENCE (LAST) HOUSE | LENGTH OF OCCUPANCY 3 YRS. | MORTGAGE/RENT PAYMENT UNKNOWN | RESIDES WITH/RELATIONSHIP SELF |
|---|---|---|---|---|
| RESIDENTIAL STABILITY LAST FIVE YEARS GOOD | | CAME TO STATE / FROM 1970/OREGON | | CAME TO COUNTY / FROM 1970/OREGON |

Additional information

FORMAL EDUCATION: COMPLETED THE 11TH GRADE AT EAGLE POINT HIGH SCHOOL IN THE STATE OF OREGON; HAS TRAINING AS A MAINTENANCE MECHANIC.

| MARRIAGE / PARENTHOOD | MARITAL STATUS DIVORCED | NAME OF SPOUSE / COHABITANT (LAST) AKA: POLLY RAMIRES, PAULIN DOWELL |
|---|---|---|
| LENGTH OF UNION 9 YRS. | NO. OF CHILDREN THIS UNION 2 | SUPPORTED BY MOTHER |
| NO. PRIOR MARRIAGES / COHABITATIONS 1 | NO. OF CHILDREN THESE UNIONS 2 | SUPPORTED BY MOTHER |

Additional information      DEFENDANT STARTED LIVING WITH VICTIM POLLY RAMIRES, AKA PAULINE DOWELL IN 1971. THEY SEPARATED IN 1980 BECAUSE THEY COULD NOT GET ALONG. SHE IS CURRENTLY EMPLOYED AS A BOOKKEEPER. TWO CHILDREN, CURRENT AGES NINE AND THREE WERE BORN TO THIS RELATIONSHIP.

IN 1967, DEFENDANT MARRIED THE FORMER NEVA MC KINLEY. THEY DIVORCED IN 1972. SHE IS EMPLOYED AS A BANK MANAGER. TWO CHILDREN CURRENT AGES 17 AND 15 WERE BORN TO THIS MARRIAGE.

-7- (DOWELL)

PERSONAL HISTORY:
(CONTINUED)

SOURCES OF INFORMATION (page)

DEFENDANT

SUBSTANCE ABUSE:

__X__ No record, indication, or admission of alcohol or controlled substance abuse.

_____ Occasional social or experimental use of _____ acknowledged.

_____ See below:  Indication / admission of significant substance abuse problem.

Referred to Narcotic Evaluator ☐ Yes ☒ No          _____ Narcotic Evaluators report attached

Additional information

PHYSICAL / MENTAL / EMOTIONAL HEALTH:

__X__ No indication or claim of significant physical/mental/emotional health problem.

_____ See below:  Indication / claim of significant physical/mental/emotional health problem.

Additional information

-8-    (DOWELL)

| PERSONAL HISTORY: (CONTINUED) | | SOURCES OF INFORMATION (this page) DEFENDANT | | |
|---|---|---|---|---|

| EMPLOYMENT STATUS | ☐ EMPLOYED ☑ UNEMPLOYED | REFERRED TO WORK FURLOUGH ☐ YES ☑ NO | | EMPLOYER AWARE OF PRESENT OFFENSE ☐ YES ☑ NO |
|---|---|---|---|---|
| PRESENT/LAST EMPLOYER / ADDRESS / PHONE KEN'S MACHINE AND WELDING SANTA FE SPRINGS, CA. | | OCCUPATION MANAGER | TIME ON JOB 2½ YRS. | GROSS MONTHLY WAGE ABOUT $1600 |
| | | EMPLOYMENT STABILITY LAST 5 YEARS GOOD | TYPES OF PREVIOUS EMPLOYMENT MOTORCYCLE MECHANIC, ANIMAL FEEDER, MAINTENANCE WORK. | |

Additional information

DEFENDANT WAS EMPLOYED AT THE TIME OF HIS ARREST.

| FINANCIAL STATUS | INCOME STABILITY POOR | | NET MONTHLY INCOME NONE | |
|---|---|---|---|---|
| PRIMARY INCOME SOURCE NONE. | SECONDARY INCOME SOURCE(S) NONE | | EST. TOTAL ASSETS NONE | EST. TOTAL LIABILITIES NONE |
| MAJOR ASSETS / ESTIMATED VALUE NONE | | | | |
| MAJOR LIABILITIES / ESTIMATED AMOUNT NONE | | | | |

Additional information

-9-   (DOWELL)

1 DEFENDANT'S STATEMENT:

2     DEFENDANT STATES THAT HE WENT TO TALK TO HIS

3 COMMON-LAW WIFE, VICTIM DOWELL, AT HER HOME. WHILE THERE, SHE TOLD

4 THE DEFENDANT THAT HER BOYFRIEND, VICTIM WINNET HAD TRADED HER CAR

5 AT PARKMAN'S BAIL BONDSMAN FOR "SOMETHING". THEY DROVE TO THE

6 BONDING COMPANY SO DEFENDANT COULD CHECK ON THE CAR. HOWEVER, THERE

7 WAS NO ONE THERE SO THEY STARTED DRIVING BACK. HE SAW HIS

8 EX-COMMON-LAW WIFE'S BOYFRIEND, VICTIM WINNET SO HE PARKED HIS TRUCK

9 AND THE VICTIM PULLED UP BEHIND HIM. VICTIM WINNET STARTED SHOOTING

10 AT HIM FIRST. DEFENDANT SAID THAT HE SHOT BACK. HE INDICATES,

11 "I ALWAYS CARRY A GUN". HE SHOT THE VICTIM FOUR OR FIVE TIMES IN

12 STOMACH AND VICTIM DOWELL TOOK OFF FROM THE SCENE RUNNING. ACCORDING

13 TO THE DEFENDANT, THE POLICE CLAIMED THAT HE KIDNAPPED HIS COMMON-LAW

14 WIFE BUT DEFENDANT SAYS THAT THIS IS NOT TRUE AND THAT SHE WENT WITH

15 HIM ON HER OWN.

16     AFTER THE SHOOTING, DEFENDANT DID NOT RUN FROM THE

17 SCENE AND SAYS, "I WAITED FOR THE POLICE. I NEVER HAD ANY INTENTION

18 OF KILLING ANYONE. I'M SORRY IT HAPPENED.".

19 INTERESTED PARTIES:

20     EFFORTS TO REACH THE INVESTIGATING OFFICER, DETECTIVE

21 GRIGGS, LOS ANGELES SHERIFF'S DEPARTMENT HOMICIDE, 974-4341 HAVE

22 MET WITH NEGATIVE RESULTS. HE WAS NOT AT THE OFFICE AND A TELEPHONE

23 MESSAGE WAS LEFT FOR HIM TO CONTACT THE PROBATION OFFICER. AS OF

-10-   (DOWELL)

76C692G — PROB. 5A — PS 8-82

1  DICTATION, HE HAS NOT RETURNED THE CALL.

2  DEFENDANT WAS UNABLE TO SUPPLY THE PROBATION OFFICER

3  WITH ANY CHARACTER REFERENCES WITH TELEPHONE NUMBERS.

4  EVALUATION:

5  ALTHOUGH THIS DEFENDANT DOES HAVE A CRIMINAL RECORD,

6  HIS BEHAVIOR IN THE PRESENT OFFENSE APPEARS TO BE OUT OF CHARACTER

7  FOR HIM.  HIS PAST RECORD DOES NOT INCLUDE ANY ACTS OF VIOLENCE.

8  IT SEEMS THAT THE DEFENDANT WAS STILL EMOTIONALLY

9  INVOLVED WITH HIS COMMON-LAW WIFE AND THAT HIS VIOLENT BEHAVIOR

10  RESULTED FROM JEALOUSY.  HE COMMITTED A VERY CRUEL AND CALLOUS

11  ACT.  JUSTICE WOULD BEST BE SERVED BY HIS COMMITMENT TO STATE

12  PRISON FOR THE MAXIMUM TIME POSSIBLE.

13  SENTENCING CONSIDERATIONS:

14  CIRCUMSTANCES IN AGGRAVATION:

15  1.  THE PLANNING WITH WHICH THE CRIME WAS CARRIED
       OUT INDICATED PREMEDITATION.

16

17  2.  THE DEFENDANT'S PRIOR CONVICTIONS AS AN ADULT
       ARE OF INCREASING SERIOUSNESS.

18  3.  THE DEFENDANT WAS ON PROBATION WHEN HE COMMITTED
       THE CRIME.

19

20  CIRCUMSTANCES IN MITIGATION:

21  THERE APPEAR TO BE NO MITIGATING FACTORS.

22  IF DEFENDANT IS SENTENCED TO STATE PRISON, THE

23  HIGH-BASE TERM IS RECOMMENDED.

-11-  (DOWELL)

6C592G — PROB. 5A — PS 8-82

RECOMMENDATION:

1
2          IT IS RECOMMENDED THAT PROBATION BE DENIED AND THE

3    DEFENDANT BE SENTENCED TO STATE PRISON WITH PREIMPRISONMENT CREDIT

4    OF 237 DAYS.

5    RESPECTFULLY SUBMITTED,

6    KENNETH E. KIRKPATRICK,
     PROBATION OFFICER

7

8    BY

9        CHARLENE A. VARTANIAN, DEPUTY
         RIO HONDO AREA OFFICE
10       692-7011, X285

11   READ AND APPROVED:                    I HAVE READ AND CONSIDERED
                                           THE FOREGOING REPORT OF THE
12                                         PROBATION OFFICER.

13

14   RICHARD L. MATSON, SDPO

15   (SUBMITTED 11-9-83)                   _____
     (RECEIVED 11-9-83)                    JUDGE OF THE SUPERIOR COURT
     (TYPED 11-10-83)
16   CAV:RC  (7)

17

18          IF PROBATION IS GRANTED, IT IS RECOMMENDED THAT THE

19   COURT DETERMINES DEFENDANT'S ABILITY TO PAY COST OF PROBATION SERVICES

20   PURSUANT TO SECTION 1203.1B PENAL CODE; AND, IF CONFINEMENT IN COUNTY

21   JAIL IS ORDERED AS A CONDITION OF PROBATION, THE COURT DETERMINES

22   DEFENDANT'S ABILITY TO PAY COST OF CONFINEMENT CHARGES PURSUANT TO

23   SECTION 1203.1C PENAL CODE.

     -12-  (DOWELL)

83 DEC 30 A9:17

I & R CENTRAL