IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KENNETH DOWELL,

    Petitioner,

  v.

BOARD OF PAROLE HEARINGS,

    Respondent.

_____/

No. 08-01683 CW

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY

    Petitioner Kenneth Dowell, an inmate at San Quentin State Prison, filed a petition for a writ of habeas corpus pursuant to title 28 U.S.C. § 2254, challenging as a violation of his constitutional rights the denial of parole by Respondent California Board of Parole Hearings[1] (Board) on November 30, 2006.  Respondent opposes the petition.  Petitioner has not filed a traverse.

    After the matter was submitted, on April 22, 2010, the Ninth Circuit issued its decision in <u>Hayward v. Marshall</u>, 603 F.3d 546 (9th Cir. 2010) (<u>en banc</u>), which addressed federal habeas review of the Board's decisions denying parole to California state prisoners. The Court ordered the parties to file supplemental briefing addressing <u>Hayward</u>, and both parties did so.

    Having considered all of the papers filed by the parties, the

---

[1] Petitioner incorrectly sues the Board of Prison Hearings.

Court denies the petition.

BACKGROUND

I.   The Commitment Offense

The following summary of the facts of Petitioner's commitment offense is derived from the superior court's opinion on habeas review.

> At the time of the commitment offense, Petitioner was separated from his common law wife (ex-wife). The ex-wife was dating another man (boyfriend), who she planned to marry. Petitioner was jealous and angry with the boyfriend, because Petitioner thought that the boyfriend was coming between Petitioner and his ex-wife and children. On March 24, 1982, Petitioner entered the residence of his ex-wife. Petitioner stated that he was going to kill his ex-wife and her boyfriend. Petitioner forced his ex-wife into his vehicle. The two drove around searching for the boyfriend. The boyfriend happened to be following Petitioner. Petitioner stopped his vehicle and retrieved a handgun located beneath the seat. Petitioner told the boyfriend that he was going to kill him. Petitioner and the boyfriend fired shots. When Petitioner's handgun no longer had any ammunition, he retrieved a shotgun from his vehicle and continued to shoot at the boyfriend. The boyfriend was shot several times and died from the wounds. After Petitioner shot the boyfriend, the ex-wife ran away from the scene.

Resp.'s Ex.2, In re Kenneth Dowell, No. BH004727 (Cal. Sup. Ct. October 26, 2007) at 2.

On October 13, 1983, a jury found Petitioner guilty of second degree murder with the use of a firearm, for which he was sentenced to fifteen years to life plus two consecutive years for use of a firearm. Resp.'s Ex. 1, attachment A, November 9, 1983 Probation Officer Report.

II. November 30, 2006 Board Hearing

The Board found that Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society or a threat to

2

public safety if released from prison. The Board found that the commitment offense was carried out in an especially cruel and callous manner because it involved multiple victims -- Petitioner's ex-wife and her boyfriend, James Winnet -- and was done execution-style because Mr. Winnet had his hands up and was surrendering when Petitioner took his shotgun out of his car and shot him again. The Board also found that Petitioner's motive was trivial in relation to the offense because it was based on jealousy.

The Board found that Petitioner had an escalating pattern of criminal conduct before the commitment offense based on his convictions for public drunkenness in 1965, possession of narcotics and possession of a concealed weapon in 1970, failure to pay child support in 1974, driving under the influence of alcohol in 1977 and pandering in 1980. The Board noted that Petitioner was on probation for the pandering offense at the time of the commitment offense. The Board also noted that Petitioner had a history of unstable or tumultuous relationships with others, notably with his ex-wife.

The Board emphasized that, although Petitioner attended services of the church of the Latter Day Saints (LDS), he had not attended any self-help programs since 1996. The Board also cited a May 2, 2006 report authored by psychologist Dr. Michelle Inaba, who concluded that Petitioner presented a low risk of violence in a controlled environment and a low risk of violence if released into the community, provided he abstained from the use of alcohol and drugs. The Board was concerned that Dr. Inaba failed to estimate Petitioner's ability to refrain from the use of alcohol when

3

released and failed to address whether Petitioner had accepted responsibility for the commitment offense, and was aware of its underlying causes and of his need for future therapy and self-help programs.  The panel noted that Dr. Inaba only addressed these questions by quoting Petitioner's statement that "he hasn't thought about drinking for years," and concluded that this was an inadequate diagnosis or prediction of Petitioner's ability to remain alcohol-free in an uncontrolled environment.  The Board mentioned that Dr. Inaba's 2000 psychological evaluation of Petitioner was fairly negative and that the risks and concerns she raised in it were not adequately addressed in the 2006 report.

The Board also found that Petitioner's parole plans were inadequate because he did not have viable residential options in Los Angeles County, the county of his legal residence.  The Board noted that Petitioner had plans to stay with his brother in Oregon, but did not think Petitioner could be released out of state and was concerned that living with his brother would expose him to an environment that included alcohol and guns.  The Board also noted that Petitioner had no employment plans and that his statement that he would find a job when released was not adequate.  The Board suggested that, at his next hearing, Petitioner provide to the Board copies of letters he sends out to potential employers with the responses received and letters he writes to halfway houses for living arrangements upon release.

The Board concluded that Petitioner had positive achievements in that he had been discipline-free during the entire time of his incarceration and he had completed vocational training courses, but

1  that the positive achievements did not outweigh the factors of
2  unsuitability.  In particular, the Board concluded that Petitioner
3  needed to participate in documented self-help programs to enable
4  him to face, discuss, understand and cope with stress in a non-
5  destructive manner and, until he did this, he would continue to be
6  unpredictable and a threat to others.

III. Superior Court Habeas Decision

On July 13, 2007, Petitioner filed, in superior court, a petition for a writ of habeas corpus challenging the Board's November 6, 2006 decision finding him unsuitable for parole.  On October 26, 2007, the superior court issued a written decision denying Petitioner habeas relief.  See Resp's Ex. 2, In re Dowell, BH004727.  The court noted that the Board had based its decision on the following factors:  (1) the circumstances of the commitment offense; (2) Petitioner's criminal history; (3) Petitioner's unstable social history; (4) Petitioner's insufficient participation in self-help programs, and (5) Petitioner's lack of viable parole plans.  Id. at 1.

The court found that "some evidence" supported each of the Board's reasons for determining unsuitability, and accepted the Board's reasons as some evidence to support its finding that Petitioner posed an unreasonable risk to the community if released. The court found that the commitment offense was committed in an especially cruel manner in that multiple victims were attacked, injured or killed, the offense was carried out in a dispassionate and calculated manner and the motive for the crime was trivial in relation to the offense.  The court found there was some evidence

5

to support the Board's finding regarding Petitioner's criminal history based on his previous convictions that were enumerated by the Board and the fact that Petitioner was on probation for pandering when he committed the commitment offense. The court concluded that Petitioner's record showed escalation and that he was undeterred by the earlier attempts to correct his criminality. The court also found that Petitioner had abused his ex-wife during the course of their relationship and this was some evidence to support the Board's finding that Petitioner had a history of unstable social relationships. Id. at 2-3.

The court also found the record contained some evidence to support the Board's finding that Petitioner had not sufficiently participated in any recent self-help programs. Finally, the court found there was some evidence to support the Board's finding that Petitioner lacked realistic parole plans because he did not have a place to reside in the last county of his legal residence or an offer of employment. Id. at 4. The court concluded that its findings on all of the above factors constituted "some evidence" to support the Board's determination that Petitioner presented an unreasonable risk of danger to society and was therefore not suitable for release on parole. Id.

Petitioner filed subsequent habeas petitions in the California court of appeal and the California Supreme Court. Both petitions were summarily denied. (Resp.'s Exs. 4, 6). Petitioner brought this federal habeas corpus petition challenging the state court decisions upholding the Board's determination.

6

LEGAL STANDARD

Because this case involves a federal habeas corpus challenge to a state parole eligibility decision, the applicable standard is contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002).

Under AEDPA, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).  A federal court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).

Where, as here, the highest state court to reach the merits issued a summary opinion which does not explain the rationale of its decision, federal court review under § 2254(d) is of the last state court opinion to reach the merits.  Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000).  In this case, the last state court opinion to address the merits of Petitioner's claim is that of the California superior court.

DISCUSSION

A prisoner has no constitutional or inherent right to be released before the expiration of a valid sentence.  Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979).

7

1  However, when a state statutory scheme creates a presumption that
2  parole release will be granted unless designated findings are made,
3  an inmate does have a constitutionally protected expectancy of
4  release on parole.  Id. at 12; Board of Pardons v. Allen, 482 U.S.
5  369, 373 (1987); Hayward, 603 F.3d at 561.  In California, the
6  parole statutes create certain procedural rights for prisoners.
7  Id.  Moreover, the California Supreme Court, in In re Lawrence, 44
8  Cal. 4th 1181 (2008), and In re Shaputis, 44 Cal. 4th 1241 (2008),
9  established that, as a matter of state constitutional law, "some
10 evidence" of future dangerousness is necessary for the denial of
11 parole.  Hayward, 603 F.3d at 562.  Pursuant to the California
12 Supreme Court cases, the paramount consideration for the Board is
13 whether the inmate currently poses a threat to public safety.  Id.
14     Thus, on federal habeas review, parole decisions in California
15 are analyzed under the "some evidence" standard set forth by the
16 California Supreme Court in Lawrence and Shaputis.  Hayward, 603
17 F.3d at 562-63.  Federal habeas courts must "decide whether the
18 California judicial decision approving the Board's decision
19 rejecting parole was an 'unreasonable application' of the
20 California 'some evidence' requirement, or was 'based on an
21 unreasonable determination of the facts in light of the evidence.'"
22 Id. at 563.
23     In its supplemental brief, Respondent argues that Hayward
24 provides that a federal habeas court must determine only
25 (1) whether the prisoner received an opportunity to be heard and a
26 statement telling him why he was not paroled, and (2) whether
27 California's procedures were fundamentally sufficient to protect

8

the prisoner's state substantive right.  This argument is foreclosed by post-Hayward Ninth Circuit cases.  In Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010), the court noted that the respondents, who had raised the same argument that Respondent does here, had failed to recognize that state-created rights may give rise to a liberty interest that may be enforced under federal law. The court explained that Hayward's holding, that a federal habeas court may review the reasonableness of the state court's application of California's "some evidence" rule, meant that compliance with that state requirement was mandated by the federal Due Process Clause.  Pearson, 606 F.3d at 609.  Furthermore, Pearson explained that "Hayward specifically commands federal courts to examine the reasonableness of the state court's application of the California 'some evidence' requirement, as well as the reasonableness of the state court's determination of the facts in light of the evidence.  That command can only be read as requiring an examination of how the state court applied the requirement."  Pearson, 606 F.3d at 609 (emphasis in original); accord Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010).

    Likewise, Petitioner's claim that the preponderance of the evidence standard must be substituted for the "some evidence" standard is foreclosed by Hayward, which explained that federal habeas review is available only to decide whether the state court decision rejecting parole was an unreasonable application of the California "some evidence" requirement.

    California law provides that a parole date is to be granted unless it is determined "that the gravity of the current convicted

9

offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . ."  Cal. Penal Code § 3041(b).

The California Code of Regulations sets out the factors showing suitability or unsuitability for parole that the parole authority is required to consider.  Cal. Code Regs. tit. 15, § 2402(b).  These include "[a]ll relevant, reliable information available," such as:

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Id.

Circumstances tending to show unsuitability for parole include the nature of the commitment offense and whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner."  Id. § 2402(c).  This includes consideration of the number of victims, whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is

10

inexplicable or very trivial in relation to the offense." Id.

Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental health problems related to the offense, and serious misconduct in prison or jail. Id.

Circumstances tending to support a finding of suitability for parole include the lack of a juvenile record, a stable social history, signs of remorse, that the crime was committed as a result of significant stress in the prisoner's life, a lack of criminal history, a reduced possibility of recidivism due to the prisoner's present age, that the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release, and that the prisoner's institutional activities indicate an enhanced ability to function within the law upon release. Id. § 2402(d).

The California Supreme Court, in Lawrence, explained the "some evidence" standard as follows:

> This standard is unquestionably deferential, but certainly not toothless, and "due consideration" of the specified factors requires more than rote recitation of the relevant factors with no reasoning establishing a rational nexus between those factors and the necessary basis for the ultimate decision–-the determination of current dangerousness. . . .
>
> Indeed, our conclusion that current dangerousness (rather than the mere presence of a statutory unsuitability factor) is the focus of the parole decision is rooted in the governing statute. We have observed that "'[t]he Board's authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted. . . .'"

11

> Consistent with this statutory regime, the Board's regulations, establishing a matrix of factors for determining the suggested base terms for life prisoners, contemplates that even those who committed aggravated murder may be paroled after serving a sufficiently long term if the Board determines that evidence of postconviction rehabilitation indicates they no longer pose a threat to public safety. . . .

In re Lawrence, 44 Cal. 4th at 1210-11.

The Court finds that the record contains "some evidence" of a nexus between the findings of the state court and its determination that Petitioner would be a danger to society if released.

The findings of the Board and the state court that the commitment offense was carried out in an especially cruel manner constitutes "some evidence" of Petitioner's current dangerousness. The offense was especially cruel because it involved multiple victims and it was an execution-like killing, carried out after the victim had surrendered. Petitioner contends there were not multiple victims because he did not force his ex-wife into his car; rather, she came with him voluntarily. At the hearing before the Board, the following facts regarding the commitment offense, taken from the Probation Officer's Report, were read into the record:

> At about 12:30 in the morning on March 24, 1982, the defendant entered the residence of victim Pauline Dowell, ex-common-law wife, forced her to dress and stated that he was going to kill her and her boyfriend, victim James Winnet. Defendant then forced her into his red pickup and they drove looking for victim Winnet. At the time, victim Dowell did not know that there--they were being followed by victim Winnet. The Defendant stopped the pickup truck and retrieved a handgun from beneath the seat and exited the truck. Several shots were fired, and the Defendant told victim Winnet that he was going to kill him. At about 1:40 a.m., victim Winnet was determined to be dead. After Defendant shot victim Winnet, victim Dowell ran from the scene to call for help. The Defendant shouted for her to stop, and when she did not comply, he fired one shot at her.

12

1  Petitioner was asked:

2      Sir, is that an accurate description of what--I know it's
       a brief description, but is that an accurate description
3      of what happened on that night?

4  He responded:

5      Yeah, that's the record of the court.  I dispute one item
       in there.  I never shot at Pauline.  But other than that,
6      it's fairly accurate, yes.

7  Transcript of November 30, 2006 Hearing (TR) at 10-11.

8      Thus, Petitioner's current statement that his ex-wife came
9  with him voluntarily is not credible.

10     However, Petitioner's current dangerousness is not supported
11 by the findings of the Board and the superior court that he engaged
12 in an "escalating pattern of criminal conduct."  Petitioner's
13 convictions were episodic and were for minor, non-violent offenses
14 such as public drunkenness, failure to pay child support and
15 driving under the influence (DUI).  He was placed on probation for
16 the first two offenses and served eight days in jail for the DUI.
17 Regarding the convictions for possession of narcotics and a
18 concealed weapon, Petitioner explained at the hearing that the
19 narcotics were prescription medications that did not belong to him.
20 They were in the pocket of a friend's coat that he was wearing, and
21 the concealed weapon was a hunting knife he had in his belt because
22 he and his friends had just come home from a camping trip.  Id. at
23 20.  Petitioner may have minimized the facts of this crime, but his
24 sentence was only one year probation.  Likewise, Petitioner's
25 sentence for pandering was three years probation.

26     This record cannot be described as escalating criminal
27 conduct.  However, the fact that Petitioner had been placed on

13

probation several times and, most significantly, was on probation at the time of the commitment offense, supports the court's finding that he did not learn from attempts to correct his criminality. This factor constitutes "some evidence" that Petitioner would be a danger to society if released on parole.

Petitioner argues that the Board's consideration of his past criminal record was improper because Title 15 California Code of Regulations §§ 2322 and 2326 prohibit the Board from considering past crimes that are over five years old. However, these regulations apply to prisoners sentenced under the indeterminate sentence law prior to November 8, 1978. Petitioner was sentenced in 1983. Furthermore, Title 15 California Code of Regulations § 2315 indicates that the Board considers the factors in §§ 2318-2328 to determine the period of confinement once a prisoner is found suitable for parole. The Board did not find Petitioner suitable for parole; therefore, §§ 2322 and 2326 would not have been applicable even if Petitioner had been sentenced prior to 1978. Title 15 California Code of Regulations §§ 2400 et seq. apply to prisoners who committed murders on or after November 8, 1978, such as Petitioner. Under Title 15 California Code of Regulations § 2402(b), the Board may consider involvement in other criminal activity that is reliably documented. Petitioner argues his past crimes are not reliably documented. However, the probation report's summary of Petitioner's criminal history, including his arrests and convictions, is reliable documentation. The Board summarized this history at the hearing and asked Petitioner if there was anything that should be added or deleted

14

and Petitioner answered, "Not that I'm aware of."  TR at 30.

The court's finding that Petitioner had a history of unstable social relationships is not supported by the evidence.  This finding was based upon the fact that Petitioner once pushed or hit his wife, who then called the police.  However, Petitioner explained to the Board that this was the only time he was violent toward his wife and, at that time, he was upset because she was being unfaithful to him.  This isolated instance is insufficient to support the finding that Petitioner has a "history of unstable social relationships."

The Board expressed three concerns about Petitioner's parole plan to live with his brother in Oregon: (1) Petitioner's brother's home environment included guns and alcohol; (2) Petitioner could not be paroled out-of-state; and (3) Petitioner did not have an offer of employment upon release from prison.  The record was devoid of any evidence of guns and alcohol at the residence of Petitioner's brother.  To the contrary, Petitioner's counsel argued that Petitioner's brother would provide an appropriate environment because he belonged to the LDS church, which abjures alcohol.  TR at 81.  As indicated above, while in prison, Petitioner attended LDS services and intended to continue attending them after his release.

The Board did not indicate why Petitioner could not be paroled out-of-state. California Penal Code § 11177(1)(a) provides that certain states have agreed to permit parolees to reside in any other state that is a party to the agreement if that person is a resident of or has family residing in the receiving state and can

15

obtain employment there. Although Petitioner has family in Oregon, he did not have a job offer nor did he submit evidence that he could obtain employment there. Thus, the Board was correct in discounting Petitioner's parole plan for Oregon. Turning to the alternative of paroling in California, the Board found that Petitioner did not submit evidence of efforts to find housing at a half-way house or other suitable living arrangements in California. Petitioner's lack of supportive living arrangements would make his transition into society difficult. Therefore, the findings of the Board and state court that Petitioner's insufficient plans for living arrangements was "some evidence" of current dangerousness was not unreasonable.

As noted above, the Board was correct that Petitioner did not have an offer of a job upon his release, either in Oregon or California, and did not mention any efforts to seek employment. Petitioner points out that Title 15 California Code of Regulations § 2402(d)(8) requires a prisoner to make realistic plans for release or develop marketable skills. Petitioner argues that, because he has marketable skills, he is not required to have realistic parole plans. Petitioner is wrong. Both are important factors in predicting a prisoner's successful transition to a law-abiding life after release from prison. Although Petitioner received a certificate in the maintenance and operation of high pressure boilers, there is no evidence that he could obtain employment in the community on the basis of this certificate. The Board found that Petitioner's lack of realistic employment plans would make his transition into society very difficult. Petitioner

16

is less likely to be able to support a crime-free lifestyle if he does not have employment. Therefore, the findings of the Board and the state court that Petitioner's lack of an offer for a job was "some evidence" of his current dangerousness was not unreasonable.

The Board relied heavily upon the fact that Petitioner had not sufficiently participated in self-help programs as "some evidence" of his current dangerousness, and the state court affirmed this finding. After 1996, Petitioner only went to self-help group meetings through the LDS church, and failed to provide documentation of his attendance at this program. TR at 43-46. Citing Title 15 California Code of Regulations § 2402(c)(5), Petitioner argues that he does not need self-help programs because he does not have a lengthy history of severe mental problems. Although § 2402(c)(5) lists severe mental problems as a factor tending to show unsuitability for parole, it is not necessary that an inmate have mental problems to benefit from participating in self-help groups. Self-help groups can help participants achieve understanding and remorse, which are factors indicating suitability for parole. See Cal. Code Regs. tit.15, § 2402(d). Furthermore, participation in institutional activities would indicate an enhanced ability to act within the law. For these reasons, the findings of the Board and the state court that Petitioner's lack of participation in self-help programs was some evidence of current dangerousness was not unreasonable.

Petitioner objects to the Board's reliance on Dr. Inaba's 2000 psychological evaluation. However, the state court did not include this as support for the Board's finding of current dangerousness.

Finally, Petitioner argues that the Board unreasonably relied on the immutable facts of his commitment offense and his previous criminal record to find he was unsuitable for parole. In the Hayward en banc decision, the Ninth Circuit quoted Lawrence to the effect that continued reliance on a prisoner's aggravated offense, without more, does not establish current dangerousness. Hayward, 603 F.3d at 562 (citing Lawrence, 44 Cal. 4th at 1213-14). However, as discussed above, in Petitioner's case, the Board and the superior court relied on more than just the circumstances of the commitment offense and Petitioner's criminal record to conclude that he would be a danger if released. Therefore, this argument is unpersuasive.

In sum, the findings of the Board and state court that the commitment offense was committed in an especially cruel, dispassionate and calculated manner, that Petitioner had not benefitted from attempts to correct his criminality, that Petitioner lacked a suitable living arrangement and offer of employment upon release and that he had not sufficiently participated in self-help programs provide "some evidence" that Petitioner would be a danger to the public, if released on parole. Thus, the state court's denial of Petitioner's claims for habeas relief was not contrary to or an unreasonable application of Supreme Court authority or an unreasonable finding of facts based on the evidence in the record.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Court issues a certificate of appealability

18

for this petition.  <u>See</u> Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition). A certificate of appealability should be granted "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must indicate which issue or issues satisfy the showing required by § 2253(c)(2).  28 U.S.C. § 2253(c)(3).  The Court finds that Petitioner has made a sufficient showing of the denial of a constitutional right on the single issue raised in his petition.  The Clerk of the Court shall enter judgment and close the file.

    IT IS SO ORDERED.

Dated: 11/3/2010

CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

KENNETH DOWELL,

    Plaintiff,

v.

BOARD OF PRISON HEARINGS et al,

    Defendant.

Case Number: CV08-01683 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 3, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Kenneth Dowell C-78669
Avenal State Prison
P.O. Box 900
130-11Low
Avenal, CA 93204

Dated: November 3, 2010

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk